UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY O. LUTZ and PAULA G. LUTZ,

                Plaintiff,                                    Case No. 10-12513
                                                    Honorable David M. Lawson

v.

STEWART MICHIGAN TITLE, THE
MORTGAGE EXCHANGE, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., and ONEWEST,

                Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ONEWEST BANK, FSB

The plaintiffs, now acting *pro se* since their lawyers withdrew from the case in October 2010, filed the present action against the servicer and current assignee of the mortgage on their home, alleging that they committed a number of statutory and common law violations, seeking damages and equitable relief. The defendants removed the case to federal court, and on September 7, 2010 the current note holder, OneWest Bank, FSB, filed a motion for summary judgment. Defendant Stewart Title Agency filed a paper stating that it joined in part of OneWest's motion, but it did not include a brief or other explanation as to how the arguments applied to it. The plaintiffs have not responded to the motion. However, the Court has reviewed the motion papers and finds that the relevant law and facts have been set forth and that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

Of the several issues raised by OneWest, the Court finds one dispositive. The original lender from whom the plaintiffs obtained their mortgage loan was declared a failed institution and its

liabilities were assumed by the Federal Deposit Insurance Corporation (FDIC), which acted as a conservator until a sale of the bank's assets could be achieved. The plaintiffs were obliged to pursue their claims against their lender through the FDIC's administrative procedures, which the plaintiffs failed to do. The failure to exhaust these administrative remedies requires dismissal of the complaint in this Court against OneWest Bank. Therefore, the motion for summary judgment will be granted on that ground.

## I.

Plaintiffs Harry and Paula Lutz are residents of the City of Plymouth. On March 15, 2004, they closed a mortgage loan with IndyMac in the amount of $750,000 to purchase property located at 45920 Tournament Drive, Northville, Michigan. The terms called for a 30-year repayment period beginning May 1, 2004 and an adjustable rate mortgage (ARM) with fixed payments for one year. The loan contained a negative amortization feature under which the outstanding principal balance could increase up to 110% of the original loan value for the first five years. That feature allowed for the initial $750,000 loan to increase to $825,000. The initial interest rate was set at 1.25%; however, the loan contained a margin rate of 3.45%, which would cause the actual initial interest rate to be 4.675%. The plaintiffs believe this interest rate to be higher than the industry standard for residential loans. According to the terms of the contract, the interest rate could be changed annually and had a cap of 8.95%.

The plaintiffs' initial monthly payment was $2,499.39. The plaintiffs allege in their complaint that after five years, the monthly payment increased to $6,719.55. However, the Truth in Lending Disclosure Statement attached to the plaintiffs' complaint shows the monthly payment increase would only be to $4,245.48. The plaintiffs contend that the Truth in Lending Disclosure

was inaccurate because it "disclosed an adjusted payment of only the fully indexed rate, rather than the highest possible rate on a variable rate transaction." Compl. at ¶ 30. Due to the negative amortization clause, the outstanding balance increased to $803,989.36. The plaintiffs allege that the defendant knew or should have known that they would never be able to repay the mortgage loan, and the resulting transaction in effect was a "short-term lease, until the payments became so unaffordable that the borrowers would be forced into foreclosure and bankruptcy." *Id*. ¶¶ 22-23.

The plaintiffs further allege that the defendant packaged a loan which "contained . . . an excessive 'kick-back' to the mortgage broker." *Id*. ¶ 24. Defendant Mortgage Exchange, Inc. was paid 2.56% of the loan amount in fees, including a mortgage broker compensation of $18,750 from IndyMac.

Additionally, the plaintiffs allege that the loan included a prepayment penalty, which was not disclosed and exceeded the rate permitted by Michigan Compiled Laws § 438.31c(2)(c). The prepayment penalty was effective for the first three years, so if the borrower made a full or partial payment that totaled more than twenty percent of the original principal amount in any twelve month period, the borrower is subject to a prepayment penalty of six months advanced interest on the amount prepaid in excess of twenty percent of the original principal amount. The plaintiffs allege that the defendant concealed the loan's terms during the loan origination, which resulted in the plaintiffs losing their home. The plaintiffs further allege that the defendant did not use the proper methods to determine the plaintiffs ability to repay the home loan. The plaintiffs believe that they would never have been approved for this loan if the defendant had used an appropriate approval process. The approval of the loan was based on the loan-to-value (LTV) ratio of 75%. At the time of the loan origination, the plaintiffs were approved based upon their stated income and a medium-

-3-

to-high-risk credit rating. Their debt-to-income ratio (DTI) was as high as 55.45%. The plaintiffs believe that their high DTI exceeded customary underwriting standards.

On March 6, 2009, the plaintiffs sold the property in a short sale for $580,000, which essentially extinguished the indebtedness created by the March 2004 mortgage. The plaintiffs filed their complaint in state court seeking rescission of the loan on May 18, 2010, over fourteen months after selling their property.

In their five-count complaint, the plaintiffs allege a violation of Michigan's anti-accelerating interest rate law, Mich. Comp. Laws § 438.31c *et seq.*, (count I); violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* (count II); violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.* (count III); negligence (count IV); and unjust enrichment (count V). The plaintiffs seek rescission of the mortgage and a return of all amounts paid, plus interest.

With its motion for summary judgment, OneWest attached exhibits establishing the chain of events that led to its acquisition of the assets of IndyMac Bank, FSB including the plaintiffs' mortgage note. It is undisputed that a little more than four years after the plaintiffs signed their home loan papers, IndyMac Bank, FSB was declared a failed financial institution and subsequently closed by the Office of Thrift Supervision (OTS) in July of 2008. OTS appointed the FDIC as conservator for IndyMac Bank, FSB. All the assets of IndyMac Bank, FSB were transferred to IndyMac Federal Bank, FSB (IndyMac Federal) as the assuming institution. The liabilities of IndyMac Bank, FSB remained with the FDIC when the assets were transferred to IndyMac Federal.

-4-

On March 19, 2009, the FDIC completed the sale of IndyMac Federal Bank, FSB to defendant OneWest. OneWest was a newly-formed federal savings bank organized by IMB HoldCo LLC. All deposits of IndyMac Federal Bank, FSB then were transferred to OneWest Bank, FSB. There is no evidence, however, that the FDIC passed along IndyMac's liabilities to OneWest, which typically are not conveyed. *Cf. West Park Assocs. v. Butterfield Sav. & Loan Ass'n*, 60 F.3d 1452, 1458-59 (9th Cir. 1995).

## II.

In its summary judgment motion, OneWest states the uncontestable fact that the plaintiffs' claims based on the origination of the mortgage loan arose prior to the sale of assets to that defendant. After IndyMac Bank failed, it was the FDIC to whom the plaintiffs must look for relief on their claims against their lender, since the FDIC was appointed the receiver for IndyMac Bank. Therefore, OneWest asserts, the plaintiffs are required to follow the procedures prescribed for claims against the FDIC in order to pursue their grievances against their original lender.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

-5-

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). An issue is "genuine" if a "reasonable jury could return a verdict for the non-moving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing

"evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Ibid.* (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted).

The Financial Institution's Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821 *et seq.*, "was enacted during the savings and loan insolvency crisis to enable the FDIC and the Resolution Trust Company (RTC) to efficiently and expeditiously wind up the affairs of hundreds of failed financial institutions." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005) (citing *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995)). The Act "grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (citing 12 U.S.C. § 1821(d)(3)(A)). Among the

-7-

procedures for determining such claims, FIRREA "establishes an administrative process for handling claims made against the assets of a failed bank that has been placed under receivership." *Lewis*, 398 F.3d at 739.

The claims-handling procedure can be found at 12 U.S.C. § 1821(d)(3)-(13). The FDIC must give notice to creditors to file claims by a specified date. 12 U.S.C. § 1821(d)(3)(B). After a claim is filed, the FDIC has 180 days to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A). If the claim is disallowed or has not been ruled on after 180 days, then the claimant may seek administrative review or file and action in the district court within 60 days. 12 U.S.C. § 1821(d)(6)(A). If the claimant fails to seek administrative or judicial review, then the "claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B).

To ensure that claimants resort to the administrative process, "Congress placed jurisdictional limits on the power of the federal courts to review matters involving failed savings and loans under FIRREA." *Brady Dev. Co. V. Resolution Trust Co.*, 14 F.3d 998, 1003 (4th Cir. 1994); *see also Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008). FIRREA contains an express limitation on judicial review:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over —
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). This provision "expressly bars courts from hearing 'any claim or action for payment from' or 'action seeking a determination of rights with respect to' the assets of a failed bank held by the FDIC as receiver, unless the administrative claims process is exhausted."

-8-

*Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) (quoting 12 U.S.C. § 1821(d)(13)(D)).  In

*Village of Oakwood*, the Sixth Circuit interpreted 12 U.S.C. § 1821(d)(13)(D) as imposing a

statutory exhaustion requirement rather than an absolute bar to jurisdiction.  But the provision

"precludes a court from *acquiring* jurisdiction *after* the receiver is appointed," unless the claim has

been disallowed by the receiver.  *Lewis*, 398 F.3d at 744.  As the *Freeman* court stated:

> Our sister courts have broadly applied the § 1821(d) jurisdictional bar to all manner
> of "claims" and "actions seeking a determination of rights with respect to" the assets
> of failed banks, whether those claims and actions are by debtors, creditors, or others.
> *See, e.g. Lloyd v. FDIC*, 22 F.3d [335,] 337 [(1st Cir. 1994)] (suit by debtor seeking
> equitable reformation or cancellation of mortgage agreement to prevent foreclosure
> is a "determination of rights with respects to an asset" subject to § 1821(d)(13)(D)
> jurisdictional bar); *Henderson v. Bank of New England*, 986 F.2d [319,] 321 [9th Cir.
> 1993)] (claims by unsuccessful credit card applicant for monetary damages and
> discovery of derogatory credit information are subject to § 1821(d)(13)(D)
> jurisdictional bar); *Meliezer v. Resolution Trust Corp.*, 952 F.2d [879,] 883 [(5th Cir.
> 1992)] (mortgagor's claim that failed institution was negligent in allowing mortgagor
> to assume insufficient insurance is subject to § 1821(d)(13)(D) jurisdictional bar).

*Freeman*, 56 F.3d at 1401.

Here, the plaintiffs' claims "relat[e] to any act or omission of [the] institution" for which the

FDIC has been appointed receiver.  All of the claims in the complaint arise from the origination or

execution of the mortgage loan by IndyMac Bank, FSB.  The note and mortgage on the property was

an "asset[] of [a] depository institution for which the Corporation has been appointed receiver."  12

U.S.C. § 1821(d)(13)(D)(i).  The claims all relate to an "act or omission" of IndyMac Bank, FSB,

an institution for which the FDIC had been appointed receiver.

As noted above, the plaintiffs sold the property in a short sale on March 6, 2009.  The sale

extinguished the indebtedness created by the March 2004 mortgage with IndyBank, FSB.  Almost

two weeks later, OneWest purchased IndyMac Federal Bank, FSB's assets, but there is no evidence

that any liabilities in connection with the discharged mortgage were transferred as part of the transaction.

Based on the present record, it appears that any bank liability arising from the origination or execution of the mortgage loan remains with the FDIC, and the plaintiffs' remedy lies against that entity. As a consequence, section 1821(d)(13)(D)'s limitation on judicial review applies.

In all events, the plaintiffs have no claim against defendant OneWest.

III.

Defendant OneWest argues that the complaint against it should be dismissed because the plaintiffs have not exhausted administrative remedies. Such a dismissal would be without prejudice to the plaintiffs' right to pursue their claims against the correct entity in the proper forum. Defendant Stewart Title Agency's "joinder" in the motion does not articulate how the arguments made by OneWest apply to the claims against it or describe its involvement in the transaction. Stewart Title has no formal dispositive motion pending in this case. The Court finds that the claims against OneWest, however, must be dismissed.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendant OneWest Bank, FSB [dkt. #12] is **GRANTED**.

It is further ordered that the complaint is **DISMISSED without prejudice** as to defendant OneWest Bank, FSB, **only**.

s/David M. Lawson                    
DAVID M. LAWSON
United States District Judge

Dated:  March 4, 2011

-10-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 4, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL