ORIGINAL

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

F I L E D

MAR 1 4 2011

CLERK'S OFFICE
DETROIT

Harry O Lutz (Pro SE)
Paula G. Lutz

Case # 2:10-cv-12513
HON. David M. Larson

      Plaintiffs

-vs-

ONEWEST, as successor in interest to IndyMac Bank, FSB,
STEWART TITLE,
THE MORTGAGE EXCHANGE, INC,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC,
QUICKEN LOANS, INC, A Business Entity,
TITLE SOURCE, INC, A Business Entity,
And DOES 1 through 50, inclusive,

         Defendants.

## AMENDED CIVIL COMPLAINT FOR DAMAGES

1. DECLARATORY RELEIF
2. INJUNCTIVE RELEIF
3. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING
4. VIOLATIONS OF TILA
5. VIOLATIONS OF RESPA
6. RECISSION
7. FRAUD
8. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)
9. BREACH OF FIDUCIARY DUTY
10. UNJUST ENRICHMENT
11. UNCONSCIONABILITY
12. PREDATORY LENDING
13. QUIET TITLE

## INTRODUCTION

COMES NOW the Plaintiffs HARRY O. LUTZ AND PAULA G. LUTZ (hereinafter referred to collectively as "Plaintiffs"), alleges as follows:

## PARTIES

1.      At all times relevant herein, Plaintiffs were over the age of eighteen and is and were a resident of 45920 Tournament Drive, Northville, MI 48167 (hereinafter referred to as "Subject Property").

2.      Plaintiffs purportedly entered into a loan repayment and security agreement on or about, March 15, 2004 with Defendant INDYMAC BANK F.S.B., (hereinafter referred to as "INDYMAC"), which required Plaintiffs to repay a loan of $750,000.00 to INDYMAC and a second loan of $79,500.00 from Defendant QUICKEN LOANS INC. (hereinafter referred to as "QUICKEN").

3.      The loan program for the first loan consisted of a refinance for $750,000.00 with cash out. The first loan was an Option ARM with a fixed payment for one year. The indexed the loan is tied to is the 12 month MTA. The Plaintiff had 3 different payment options in regard to the first loan, 1) minimum payment, which causes the principal to increase, 2) Interest Only, which causes the principal balance to stay the same and 3) fully amortized, which causes the principal balance to decrease. The interest rate has a discounted rate or teaser rate of 1.25%. The actual note rate is 4.675% (fully Indexed rate). The margin is 3.450%, which is well above the average rate of 2.25%. This loan has a Negative Amortization where the principal balance will increase for the first 5 years. up to 110% of the Original Loan amount, which is $825,000.00. The payment can change annually with a maximum or cap rate of 8.950%. It cannot increase or decrease more than 7.50% per year. If

the borrower makes the minimum payment of $2,499.39, which is not enough to pay for the interest that is due, by $3,081.55, this will be added to the principal. At the 61st payment the loan will recast and now the payment will be based on the new Principal amount of $803,989.36. The borrower's new payment will be $6,719.55 for the next 25 years, which is a payment shock, for the payment is more than twice the amount of the initial payment.

4.      The loan program with regard to the second loan was done 2 years later and is a HELOC for $79,500.00. The second loan has a 10 year draw period. The borrower is then required to pay the principal balance within the next 20 years. The loans were both purportedly secured by the Subject Property.

5.      Plaintiffs are informed and therefore believe that Defendant INDYMAC, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Michigan. INDYMAC is the original mortgage lender for the first loan with business addresses of: 155 North Lake Avenue, Pasadena, CA 91101.

6.      Plaintiffs are informed and therefore believe that Defendant QUICKEN, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Michigan. QUICKEN is the original mortgage lender for the second loan with business addresses of: 20555 Victor Parkway, Livonia, MI 48152. QUICKEN is also the original mortgage broker for the second loan with a business address of: 27725 Stansbury Blvd., Farmington Hills, MI 48334

7.      Plaintiffs are informed and therefore believe that Defendant STEWART MICHIGAN TITLE, (hereinafter referred to as "STEWART"), a Business Entity, form unknown, is, authorized to do business in the State of Michigan.   Plaintiffs are informed and believe that STEWART was the original title company for the first loan with business address of Agency 26211 Central Park Blvd. #304, Southfield, MI 48076.

8.    Plaintiffs are informed and therefore believe that Defendant TITLE SOURCE, INC., (hereinafter referred to as "TITLE SOURCE"), a Business Entity, form unknown, is, authorized to do business in the State of Michigan.   Plaintiffs are informed and believe that TITLE SOURCE was the original title company for the second loan with business address of 20555 Victor Parkway, Livonia, MI 48152.

9.    Plaintiffs are informed and therefore believe that Defendant THE MORTGAGE EXCHANGE, INC. (hereinafter referred to as "EXCHANGE"), a Business Entity, form unknown, is, authorized to do business in the State of Michigan.    Plaintiffs are informed and believe that EXCHANGE was the original mortgage broker for the first loan with business address of One TransAm Plaza Drive, Suite 550, OakBrook Terrace, IL 60181.

10.   Plaintiffs are informed and therefore believe that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS"), is the current mortgage nominee/beneficiary for the second loan.  MERS has a business address of PO Box 2026, Flint, MI 48501-2026.

11.   The Defendants (each of them named in paragraphs 1 through 10 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title thereto and as DOES 1 through 50 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiffs' title and their claims and each of them constitute a cloud on Plaintiffs' title to the Subject Property.  Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged.  Plaintiffs will

seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

12.    Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned herein, the Unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint.  Plaintiffs are informed and therefore believe and on that basis allege that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

13.    Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

14.    As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j] and with the Act's corresponding Regulation Z (hereinafter referred to as "RegZ")[24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; and Unfair and Deceptive Business Practices and Acts [UDAP Statutes].

## JURISDICTION

15.     The transactions and events which are the subject matter of this Complaint all occurred within the County of Wayne, State of Michigan.

16.     The Subject Property is located within the County of Wayne, State of Michigan.

## FACTUAL ALLEGATIONS

17.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

18.     For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.  Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.  The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics.  All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America.  Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they

could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

19.     The loan products sold to Plaintiffs in this case was exactly the kind of loan that has contributed to our national problem.  The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk.  They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities that placed them in this position.

20.     On or about March 15, 2004 (hereinafter referred to as "Closing Date") Plaintiffs entered into a consumer credit transaction with INDYMAC by obtaining a $750,000.00 mortgage loan allegedly secured by Plaintiff's principal residence, (Subject Property).  This note was allegedly secured by a First Trust Deed on the Property in favor of INDYMAC.  Two years later the HELOC was provided to Plaintiffs from QUICKEN which also purportedly held a Deed of Trust on the Subject Property in favor of Quicken.

21.     The terms of the finance transaction with INDYMAC are not clear or conspicuous, nor consistent, and are illegal, and include, for example, a negative amortization of the loan, an amount financed based upon a stated income and a credit report ONLY, flawed underwriting procedures, an understated finance charge and other rates, fees and terms for which INDYMAC either did not disclose, make clear or had not included as part of the finance charge.

22.     The second loan (HELOC) was used to pay off short term debt with this loan in the amount of $77,032.00. This is Equity Stripping, (paying off short term debt with a long term loan). It harms the borrower to do this, because of the costs (interest) involved when you pay off a loan in 30 years instead of 10 or less. The appraised value of the home has decrease in the last 2 years from $1,000,000.00 to $940,000.00. The CLTV is now at 88.24%, instead of 75% LTV when the

borrowers only had the first loan. When the negative amortization to the payments kick in, the principal amount increases to the maximum of $825,000.00, then the CLTV is 96.22%.

23.     In addition, and unbeknownst to Plaintiffs, INDYMAC and QUICKEN illegally, deceptively and/or otherwise unjustly, qualified Plaintiffs for a loan which INDYMAC and QUICKEN knew or should have know that Plaintiffs could not qualify for or afford by, for example, the loan was approved using only the stated income and applying a standard of the loan the far exceeded normal underwriting practices. Had INDYMAC and QUICKEN used a more accurate and appropriate factor, such as considering the Plaintiffs ability to repay the actual principal and interest for the full term of the loan, Plaintiffs would not have qualified for the loan in the first place. Consequently, INDYMAC and QUICKEN sold Plaintiffs a loan product that it knew or should have known would never be able to be fully paid back by Plaintiffs.  INDYMAC and QUICKEN ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiffs' rights sold Plaintiffs a deceptive loan product.

24.     There was no determination of the ability of the Plaintiffs to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

25.     Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

26.     The purpose of entering into the above-described mortgage loan transactions was for Plaintiffs to eventually own the Property.  That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

27.     Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under this loan agreement, including INDYMAC, QUICKEN, EXCHANGE, STEWART, TITLE SOURCE, MERS, and UNKNOWN DEFENDANTS (hereinafter referred to collectively as "Defendants") failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within.  As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

28.     A expert, certified, forensic audit of the Plaintiffs' loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiffs' loan:

29.     Plaintiffs are informed and believe and therefore allege that The Schedule of Payments from the TILA are misleading to a borrower because the adjustment payment on the TILA shows only the "possible" fully-indexed rate but does not disclose the "possible" worst case rate adjustment of 7.7%.

30.     Plaintiffs are informed and believe and therefore allege that the underwriter approved this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiffs should have been declined for this loan.  The DTI (debt to income) ratio for the borrowers at the maximum rate is 55.74%, which well exceeds normal underwriting standards. It is the fiduciary duty of the lender not to put the borrowers in harm's way. The approval for this loan is solely based on the low LTV of 75%.

31.     For the second loan, the borrowers income has decrease in the 2 years since they refinanced the first. This has caused the ratios to increase considerable. Now the DTI is 72.25% and that is when the first mortgage payment is $2,687.00 per month. If the payment increased to the cap

or maximum rate, the borrower's monthly payments would total $9,961.65. Plus the other debts, per the loan application equals at total of $15,664.17. Now their DTI is at 109.90%.

32.     Plaintiffs are informed and believe and therefore allege that that based on a Real Income Analysis, with the type of take home income Plaintiffs possess and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

33.     Plaintiffs are informed and believe and therefore allege that Defendants did not initially disclose the prepayment penalty and charged excess fees.  This loan has a 3 year prepayment penalty where if the borrower makes a partial of full prepayment of more than 20% of the original principal amount in any 12 month period, then the borrower will pay a prepayment penalty of 6 months advance interest on the amount prepaid in excess of 20% of the original principal amount.

34.     Plaintiffs are informed and believe and therefore allege that Defendants did not disclose the accurate amortization of the loan. For example, the loan documents present a "picture" of the loan whereby one continuously sees interest rates presented on the loan documents however nowhere is it mentioned what the actual amortizing payment is given the Option Adjustable Rate.

35.     Plaintiffs are informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiffs because they knew or should have known that the Plaintiffs will or had a strong likelihood of defaulting on this loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harms way).

36.     Plaintiffs are informed and believe and therefore allege that it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Plaintiffs financial position or livelihood.

37.     Plaintiffs are informed and believe and therefore allege that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

38.     Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

39.     Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

### FIRST CAUSE OF ACTION

#### Declaratory Relief

#### (Against All Defendants)

40.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

41.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the Federal Trade Commission Act, California Business and Professions Code, UDAP, TILA and RESPA.  Thus the purported power of sale by Defendants no longer applies.

42.     Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA.  Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction. Plaintiffs request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants.  Plaintiffs further requests that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem the any sale of the Subject Property "unlawful and void".

43.     As a result of the Defendants' actions, Plaintiffs have suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

44.     Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

45.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

46.     Defendants have commenced (or are planning to commence) a foreclosure action under the Notes and have scheduled (or will schedule) a non-judicial sale. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique.

47.     The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the property and will lose his home

48.     Plaintiffs has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiffs to determine the precise amount of damage Plaintiffs will suffer.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

49.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

50.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

51.     The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

52.     Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint.  Defendants were required to exercise such power in good faith.

53.     Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when Defendants:

> I.    Willfully withheld numerous disclosures;
>
> II.   Willfully withheld notices in regard to Underwriting standards, Prepayment Penalties, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated;
>
> III.  Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

54.     As a result of Defendants' breach of this covenant, Plaintiffs has suffered injury and has caused Plaintiffs the threat of loss of their home.  Plaintiffs have incurred and continue to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

55.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## **FOURTH CAUSE OF ACTION**

### **Violation of TILA, 15 U.S.C. § 1601, et.seq.**

### **(Against All Defendants)**

56.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

57.     Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

58.     Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

59.     An actual controversy now exists between Plaintiffs, who contend they have the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

60.     As a direct and proximate result of Defendants' violations Plaintiffs have incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

61.     Defendants were unjustly enriched at the expense of Plaintiffs who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

62.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Violation of RESPA, 1 U.S.C. § 2601 et.seq.

### (Against All Defendants)

63.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

64.     The loan to Plaintiffs was a federally-regulated mortgage loan as defined in RESPA.

65.     Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

66.     Here, QUICKEN and EXCHANGE were paid unearned fees, which were hidden from Plaintiffs created a windfall for INDYMAC and QUICKEN, the extent resulting in Defendants receiving a windfall of "buy back fees" over the life of the loan.

67.     The broker was paid 2.56% of the loan amount in fees. This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated. EXCHANGE received a Mortgage Broker Compensation of $18,750.00 from INDYMAC. To earn a Mortgage Broker Compensation EXCHANGE will increase the interest rate that the borrower will pay. It takes a borrower about three years to repay the Mortgage Broker Compensation. Once the three year repayment period has ended, the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment. Mortgage Broker Compensation significantly affects the borrower's payment and financial situation. Absent the presence of a separate fee agreement regarding Mortgage Broker Compensation and that the borrower agreed to pay such an excessive amount to the broker, and in evaluating the Mortgage Broker Compensation using the HUD 2 part test, EXCHANGE and the lender have enjoyed the benefits of Unjust Enrichment as well as unearned fees under RESPA. 12 CFR sec. 226.4(a), 226.17, and 18(d) and (c) (1) (iii) Under the EOCA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. INDYMAC placed borrower into a loan that had a significantly higher interest rate than what was qualified for. This was a result of paying a Mortgage Broker Compensation to the broker (which benefited the lender).

68.     No separate fee agreements that the broker and the lender have enjoyed were ever provided, resulting in the benefits of Unjust Enrichment for IUNDYMAC and QUCIKEN.

69.     Defendants violated RESPA because the payments to the mortgage broker and to the lender were misleading and designed to create a windfall.  These actions were deceptive, fraudulent and self serving.

70.     As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

### SIXTH CAUSE OF ACTION

### Rescission

### (Against All Defendants)

71.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72.     Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA Violations; 3) Fraudulent Concealment; and 4) Public Policy Grounds, each of which provides independent grounds for relief.

73.     The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind.  Here, Defendants have failed to properly disclose the details of the loan.  Specifically, the payment schedule was not property identified and there was a lack of diligence and evidence of collusion on the part of the broker, lender and underwriter to place Plaintiffs in a loan the could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

74.     The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

75.     As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for rescission of the stated loan in its entirety.

## SEVENTH CAUSE OF ACTION

### Fraud

### (Against All Defendants)

76.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

77.     Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiffs and inducing them to part with their personal and real property buy using a stated income loan.

78.     The credit application and or available W-2's provided by Plaintiffs was enough, in addition to the application itself for Defendants to know what type of loan should be offered, and what the Plaintiffs could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

79.     Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known. These include the following acts:

80.     Prepayment Penalty. This loan has a 3 year prepayment penalty where if the borrower makes a partial of full prepayment of more than 20% of the original principal amount in any 12 month period, then the borrower will pay a prepayment penalty of 6 months advance interest on the amount prepaid in excess of 20% of the original principal amount.

81.     Discounted Rate. The borrower is qualified and makes his payments based on a "discounted rate" not the fully-indexed rate based on the index and margin. In section 3G of the Note it states that the note holder will determine the amount of the monthly payment that would be

sufficient to repay the unpaid principal before the maturity date. Which means that the payment could be higher than the fully indexed rate if there is a deficit at the end of the 60 month fixed period.

82.     Excessive Loan/ Closing Fees/High Broker Compensation. The broker was paid 2.56% of the loan amount in fees. This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

83.     Mortgage Broker Compensation. The broker received a Mortgage Broker Compensation of $18,750.00 from INDYMAC. To earn a Mortgage Broker Compensation the broker will increase the interest rate that the borrower will pay. It takes a borrower about three years to repay the Mortgage Broker Compensation. Once the three year repayment period has ended, the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment. Mortgage Broker Compensation significantly affects the borrower's payment and financial situation. Absent the presence of a separate fee agreement regarding Mortgage Broker Compensation and that the borrower agreed to pay such an excessive amount to the broker, and in evaluating the Mortgage Broker Compensation using the HUD 2 part test, it is the contention of the auditor that the broker and the lender have enjoyed the benefits of Unjust Enrichment as well as unearned fees under RESPA. 12 CFR sec. 226.4(a), 226.17, and 18(d) and (c) (1) (iii) Under the EOCA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. The lender placed borrower into a loan that had a significantly higher interest rate than what was qualified for. This was a result of paying a Mortgage Broker Compensation to the broker (which benefited the lender).

84.     Equity Stripping. The borrower paid off unsecured debt with this loan for the total

amount of $58,397.00. This made the short term debt now become long term. This will cause undo harm to the borrowers for those debts have now cost them more because the term has now gone to 30 years.

85.    Plaintiffs justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiffs' damages.

86.    Plaintiffs are entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial.  Further, fraudulent concealment avoids the contract.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## EIGHTH CAUSE OF ACTION

### Unfair And Deceptive Business Act Practices (UDAP)

### (Against All Defendants)

87.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

88.    Defendants failed to undergo a diligent underwriting process for this loan a alleged in this complaint.  They also failed to properly adjust and disclose facts and circumstances relating to Plaintiffs' Adjustable Rate Mortgage and placed Plaintiffs in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it. Defendants <u>did have that knowledge of these facts, circumstances and risks but failed to disclose them.</u>

89.    Defendants failed to determine the ability of the Plaintiffs to repay the loan.  Further, the initial disclosures to Plaintiffs quoted a different rate and a loan without a prepayment penalty. The disclosures also failed to note that the quoted 1.5% rate was a variable rate loan. By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said

Defendants have violated Unfair and Deceptive Acts and Practices statutes by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of their home equity, as well as their past and future investment.

90.     By reason of the foregoing, Plaintiffs have suffered and continue to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## NINTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendants)

91.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

92.     Defendants owed a fiduciary duty to Plaintiffs and breached that duty by failing to advise or notify Plaintiffs when Defendant's broker knew or should have known that Plaintiffs will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harms way).

93.     Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the borrower. A 30-year fixed would have netted less return for the lender, though better for the borrower.

94.     Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiffs while in the capacity of Plaintiff's Lender.

95.     Defendants failed to fully comply with TILA/RESPA regulations and laws designated to protect Plaintiffs.  The failure to do so placed Plaintiffs in a serious disadvantage and potential

loss of their home.   Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## TENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

96.      Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97.      Defendants provided the Plaintiffs with an agreement to repay a loan that had an adjustable interest rate and called for compensation to Defendants for the life of the loan, which was worth value to Defendants.

98.      Plaintiffs likewise expected in return, fair and truthful dealings, disclosures and practices by Defendants while providing value to Defendants.

99.      Defendants acknowledged, accepted, and benefited from the Plaintiffs' agreement to enter into the loan.

100.      A forced sale of the Plaintiffs' home, and an allowance for Defendant's to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the Defendants enjoy the benefit of the Plaintiffs' actions without paying for their own breaches of the law and professional responsibilities.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## ELEVENTH CAUSE OF ACTION

### Unconscionability – UCC-2-3202

### (Against All Defendants)

101.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

102.   If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

103.   When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

104.   Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, federal codes and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiffs, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## TWELFTH CAUSE OF ACTION

### Predatory Lending;

### (Against All Defendants)

105.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

106.   The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under California Business and Professions Code § 17200.

107.    Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

108.    This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan.

109.    The loan does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium paid directly or indirectly, in whole or in part, to a mortgage loan officer; it consisted of excessive fees and rates; it required Plaintiffs to pay interest rates, fees and charges that were/are not justified by the marketplace; it included a debt ratio without determining the true ability of Plaintiffs to repay the loan; it was approved with the borrower having little or no equity in the home causing the borrower to be unable to refinance when the rate inevitably adjusts; and it was a inter-temporal transaction on which Plaintiffs had only qualified at the initial teaser rate and could not qualify for the loan once interest rate changed; it was based on loan applications that were inappropriate for the Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRTEENTH CAUSE OF ACTION

### Quite Title

### (All Defendants Claiming Any Interest In the Subject Property)

110.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111.    Plaintiffs is at all times herein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser...

112.    Plaintiffs are informed and therefore believes and thereupon alleges that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs.  However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

113.    Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in Plaintiff's alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiffs.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1.  For Compensatory Damages in an amount to be determined by proof at trial.

2.  For Special Damages in an amount to be determined by proof at trial.

3.  For General Damages in an amount to be determined by proof at trial.

4.  For Treble Damages in an amount to be determined by proof at trial.

5.  For Punitive Damages as against the individual Defendants.

6.  For Attorney's Fees and Costs of this action.

7.  For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8.  For Injunctive Relief;

9.  For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For any prejudgment or other interest according to law.

11. Any other and further relief that the Court considers just and proper.

March ___, 2010

_____
[Attorney for Plaintiff]

18-MAR-2011

Harry Lutz